UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

UNITED STATES OF AMERICA ex. rel.
TZAC, INC.,

                      Plaintiff,                      17-cv-4135 (PKC)

    -against-

                                                                   OPINION AND ORDER

CHRISTIAN AID,

                      Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

The Zionist Advocacy Center ("TZAC"), the qui tam relator, brings this action under the False Claims Act, 31 U.S.C. § 3729, et seq. (the "FCA"), on behalf of the United States of America. TZAC contends that defendant Christian Aid submitted false Anti-Terrorism Certifications ("ATCs") to the United States Agency for International Development ("USAID") in order to receive funding. On September 9, 2020, the United States declined to intervene in the action. (Doc 8.) Christian Aid now moves to dismiss the case based on a lack of personal jurisdiction and the Amended Complaint's failure to state a claim, Rules 12(b)(2) and 12(b)(6), Fed. R. Civ. P. For the reasons explained below, the motion to dismiss will be granted on grounds of lack of personal jurisdiction and without reaching the merits of defendant's Rule 12(b)(6) arguments.

BACKGROUND

Christian Aid is a non-governmental charitable organization based in the United Kingdom. According to the Amended Complaint, in August 2016, and March and May 2017, Christian Aid received grants from USAID. (Doc 17 (Am. Compl.) at ¶¶ 8–9.) To be eligible for the grants, it submitted signed ATCs affirming that it was not affiliated with any terrorist

organizations.  (Id.)  The complaint purports to incorporate by reference two of the ATCs, one signed on January 8, 2017 in London, and one on March 17, 2017 in Nairobi.  (Id. at ¶ 10a.)  The ATCs specify that Christian Aid, to the best of its knowledge, has not in the last ten years provided "material support or resources to any individual or entity that commits, attempts to commit, advocates, facilitates, or participates in terrorist acts" and will not do so in the future.  (Id. at ¶ 10.)  The certifications resulted in grants to Christian Aid totaling approximately $26,116.  (Id. at ¶ 19.)

These ATCs were allegedly fraudulent.  According to TZAC, in late 2015, Christian Aid sponsored a vocational training course in Lebanon to train mentally-disabled individuals to repair cellular telephones.  (Id. at ¶ 12.)  The program was run through the Lebanese Physical Handicap Union ("LPHU"), an organization that Christian Aid had worked with previously.  (Id. at ¶ 12a.)  To facilitate the program, LPHU hired an organization called Jihad al Binaa to perform the training course.  (Id. at ¶ 12c.)  Jihad al Binaa has been designated by the United States as a "Specially Designated Global Terrorist" since February 2007, and is an arm of Hezbollah, a designated "Foreign Terrorist Organization" since October 1997.  (Id. at ¶ 11a.)  TZAC asserts that LPHU was fully aware of Jihad al Binaa's involvement with the training courses.  (Id. at ¶ 12e.)  As sponsor of the program and "partner" of LPHU, Christian Aid is "directly chargeable" with LPHU's knowledge and activities, and at a minimum, acted recklessly in failing to ascertain the involvement of a terrorist organization.  (Id. at ¶¶ 12f–12g.)

RULE 12(b)(2) STANDARD

On a motion to dismiss for lack of personal jurisdiction, plaintiff bears the burden of demonstrating the court's personal jurisdiction over the defendant.  Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34-35 (2d Cir. 2010).  The complaint's allegations are assumed to

be true, and plaintiff need only make a prima facie showing of personal jurisdiction.  Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 85 (2d Cir. 2013) (per curiam).

The court construes any pleadings and affidavits in the light most favorable to the plaintiff and resolves all doubts in plaintiff's favor.  Id. at 85.  However, courts should "not draw argumentative inferences in the plaintiff's favor" or "accept as true a legal conclusion couched as a factual allegation."  In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 673 (2d Cir. 2013) (quotation marks omitted).  A court has "considerable procedural leeway" on a Rule 12(b)(2) motion, and may decide it on the basis of affidavits alone, permit discovery in aid of the motion, or conduct an evidentiary hearing.  Dorchester, 722 F.3d at 84.

In this case, neither side has submitted documentary evidence in connection with the Rule 12(b)(2) motion.  TZAC asks for a hearing or to take discovery "to the extent that the defendant has made factual submissions to the Court."  (P. Mem. at 9.)  Though defendant has submitted a reply affidavit, its only content are two attached complaints from cases relied upon by plaintiff in its opposition to defendant's 12(b)(6) motion.  (Doc 25; P. Mem at 4–5.)  The Court therefore decides the Rule 12(b)(2) motion based on the text of the Amended Complaint.

DISCUSSION

Christian Aid argues that because it is based in the United Kingdom, and this suit arises over certifications signed in London and Nairobi, TZAC has not plausibly alleged facts that would support the exercise of personal jurisdiction over it.  TZAC argues that there is a basis for personal jurisdiction because the False Claims Act authorizes nationwide service of process, so the jurisdictional inquiry is upon Christian Aid's contacts with the United States more generally, and it has alleged sufficient contacts between Christian Aid and the nation as a whole.  (Am. Compl. at ¶¶ 7–7b.)

"To exercise personal jurisdiction lawfully, three requirements must be met. 'First, the plaintiff's service of process upon the defendant must have been procedurally proper. Second, there must be a statutory basis for personal jurisdiction that renders such service of process effective . . . Third, the exercise of personal jurisdiction must comport with constitutional due process principles.' " Waldman v. Palestinian Liberation Organization, 835 F.3d 317, 327 (2d Cir. 2016) (quoting Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 674 F.3d 50, 59–60 (2d Cir. 2012)).

TZAC satisfies the first requirement because the False Claims Act authorizes nationwide service of process. See 31 U.S.C. § 3732(a) ("Any action . . . may be brought in any judicial district in which the defendant . . . can be found, resides, transacts business, or in which any act proscribed by section 3729 occurred.  A summons . . . shall be issued by the appropriate district court and served at any place within or outside the United States.").  The second requirement is satisfied as well.  Under Rule 4(k)(1)(C), Fed. R. Civ. P., "[s]erving a summons or filing a waiver of service establishes personal jurisdiction over a defendant: when authorized by federal statute."  See Chew v. Dietrich, 143 F.3d 24, 27 (2d Cir. 1998) ("When a complaint asserts federal jurisdiction, Rule 4 of the Federal Rules of Civil Procedure now extends the reach of federal courts to impose jurisdiction over the person of all defendants against whom federal law claims are made and who can be constitutionally subjected to the jurisdiction of the Courts of the United States.") (quoting advisory committee notes to 1993 Amends.).  Thus, service was proper and there is a statutory basis for the exercise of personal jurisdiction.  Still, the due process inquiry remains; "Congress, in providing for nationwide service of process, remains subject to the constraints of the Due Process clause of the Fifth Amendment."  Mariash v. Morrill, 496 F.2d 1138, 1143 (2d Cir. 1974).

"Pursuant to the due process clauses of the Fifth and Fourteenth Amendments, there are two parts to the due process test for personal jurisdiction . . . the minimum contacts inquiry and the reasonableness inquiry." Waldman, 835 F.3d at 331 (citing Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945) and Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 127 (2d Cir. 2002)). "The minimum contacts inquiry requires that the court determine whether a defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction" and "the reasonableness inquiry requires the court to determine whether the assertion of personal jurisdiction over the defendant comports with traditional notions of fair play and substantial justice." Id. (citations and internal quotation marks omitted).

A defendant may be subject to either general or specific jurisdiction. Under general jurisdiction, a district court may "hear any and all claims against that defendant . . . when the defendant's affiliations with the State in which suit is brought 'are so constant and pervasive as to render [it] essentially at home in the forum State.' " Waldman, 835 F.3d at 331 (quoting Daimler AG v. Bauman, 571 U.S. 117, 122 (2014)). Under the narrower specific jurisdiction, a district court may hear certain claims against a defendant where that defendant "has purposefully directed his activities at residents of the forum, and [] the litigation results from alleged injuries that arise out of or relate to those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).

The Second Circuit has acknowledged that the due process inquiries under the Fifth and Fourteenth Amendments are "basically the same . . . [t]he principal difference is that under the Fifth Amendment the court can consider the defendant's contacts throughout the United States, while under the Fourteenth Amendment only the contacts with the forum state

may be considered." Waldman, 835 F.3d at 330 (quoting Chew, 143 F.3d at 28 (internal quotation marks removed)). When a plaintiff asserts a federal cause of action against a foreign defendant, the due process clause of the Fifth Amendment is the limitation on the federal forum's exercise of personal jurisdiction. "It is not the State of New York but the United States which would exercise its jurisdiction over [defendant]." Mariash, 496 F.2d at 1143. Accordingly, the Court will consider Christian Aid's contacts with the nation as a whole.[1]

Paragraphs 7 through 7c of the Amended Complaint detail the jurisdictional allegations. TZAC asserts that Christian Aid is a member of the Act Alliance, a group of charitable organizations with an office in New York. (Am. Compl. at ¶ 7.) Christian Aid also "caused to be created" a nonprofit organization registered in New York called Inspiraction. (Id.) Executives from Christian Aid have, once in 2018 and once in 2019, traveled to New York to attend conferences and meet with policymakers. (Id.) Lastly, TZAC points to language in the USAID certifications, stating that "the United States will have the right to seek judicial enforcement of these assurances." (P. Mem. at 9; P. Mem. Ex. 1 at 8.) Even taking these allegations as true, these are insufficient contacts to support this Court's exercise of personal jurisdiction over Christian Aid on either a general jurisdiction or specific jurisdiction basis.

---

[1] The question of whether nationwide contacts or in-state contacts are relevant to the consideration of personal jurisdiction in this case was once purported to be left open by the Second Circuit. See Gucci America, Inc. v. Weixing Li, 768 F.3d 122, 142 n.21 (2d Cir. 2014) ("Several of our sister circuits have endorsed the position that, when a civil case arises under federal law and a federal statute authorizes nationwide service of process, the relevant contacts for determining personal jurisdiction are contacts with the United States as a whole. . . . This court has not yet decided the issue."). However, the holding in Waldman affirms that nationwide contacts are relevant to satisfy the Fifth Amendment's due process inquiry for these statutes. This is consistent with the holdings of other judges in this district confronted with the question. See e.g., Broumand v. Joseph, _ F. Supp. 3d _, 2021 WL 771387, at *6 (S.D.N.Y. Feb. 27, 2021) (Rakoff, J); Sullivan v. Barclays PLC, No. 13-cv-2811, 2017 WL 685570, at *42 (S.D.N.Y. Feb. 21, 2017) (Castel, J.); In re Libor-Based Financial Instruments Antitrust Litig., No. 11-MDL-2262, 2015 WL 4634541, at *18 (S.D.N.Y. Aug. 4, 2015) (Buchwald, J); S.E.C. v. Straub, 921 F. Supp. 2d 244, 253 (S.D.N.Y. 2013) (Sullivan, J).

Christian Aid, which is based in and organized under the laws of the United Kingdom, is not "fairly regarded as at home" in the United States. Daimler, 571 U.S. at 137; Waldman, 835 F.3d at 332. The alleged facts fall far short of the "constant and pervasive" contacts justifying the exercise of general jurisdiction. Daimler, 571 U.S. at 122. Taken generously, they consist of occasional business trips to New York, membership in the Act Alliance, and taking unspecified steps to facilitate the creation of Inspiration, the New York based nonprofit. But the Act Alliance is an enormous organization consisting of 135 churches from 120 countries with offices around the globe.[2] The nonprofit organization that Christian Aid "caused to be created" is an entirely separate entity from Christian Aid itself. TZAC has provided no further information regarding the specific steps Christian Aid took in creating it, or the extent to which they are involved with its operations. "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." Walden v. Fiore, 571 U.S. 277, 286 (2014) (quoting Burger King, 471 U.S., at 475). Membership in the Act Alliance and creation of Inspiration are far too attenuated contacts to support the exercise of general jurisdiction over Christian Aid. Such jurisdiction is proper where the organization is headquartered, barring "exceptional" cases. Gucci America Inc., 768 F.3d at 135. "The defendant['s] activities in this case . . . plainly do not approach the required level of contact to qualify as 'exceptional.'" Waldman, 835 F.3d at 335 (quoting Daimler, 571 U.S. at 139 n.19).

The contacts are insufficient to establish due process support for specific jurisdiction as well. The "suit-related contact" between Christian Aid and the United States is

---

[2] Contact, Act Alliance, https://actalliance.org/about/contact/ (last accessed June 1, 2021).

minimal.  Waldman, 835 F.3d at 335.  First, membership in the Act Alliance, founding the nonprofit, attending business meetings, and lobbying, have nothing to do with the present suit.  This is an FCA case, so the suit-related contacts pertain to the making of the false claim.  Here, the Amended Complaint is sparse on details.  No facts regarding the negotiation, discussion, or government signing of the certifications have been pleaded.  The allegedly fraudulent ATCs were signed by Christian Aid executives in cities outside of the United States.  The allegedly terrorist-affiliated program was put on in Lebanon.  Even under the "effects test" the Amended Complaint is insufficient.[3]  Waldman, 835 F.3d at 337.  Even if "defendant[] may have provided material support to terror organizations . . . issues persist with respect to whether this support was expressly aimed at the United States." Id. at 339 (quoting In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d at 678) (internal quotation marks omitted).  TZAC has not asserted that Christian Aid actually knew about the association with Jihad al Binna, never mind how much money it directly or indirectly gave to the organization or whether "the support was earmarked for use in specific schemes. . . ."  In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d at 678–79.  In the face of such a sparse Amended Complaint, the Court cannot exercise personal jurisdiction over a foreign-based charity with limited ties to the United States.

    TZAC dwells on a clause included in the ATCs specifying that "the United States will have the right to seek judicial enforcement of these assurances." (P. Mem. Ex. 1 at 8.)  But this is plainly not a forum selection clause, nor could Christian Aid foresee it being construed as such.  It says nothing about the aid recipient's submission to the jurisdiction of a forum in the

---

[3] "The effects test is a theory of personal jurisdiction typically invoked where [] the conduct that forms the basis for the controversy occurs entirely out-of-forum, and the only relevant jurisdictional contacts with the forum are therefore in-forum effects harmful to the plaintiff. In such circumstances, the exercise of personal jurisdiction may be constitutionally permissible if the defendant expressly aimed its conduct at the forum."  Licci ex rel. Licci, 732 F.3d at 173 (citation omitted).

United States.  USAID is an agency with a 2019 budget of over $16 billion dollars for organizations like Christian Aid.[4]  Had the agency wished to ensure jurisdiction over any suits arising out of the certifications, it could have included a forum selection clause.  As the ATCs currently stand, the United States has a right to seek judicial enforcement of the certifications.  But if it chooses to do so in a United States court, it must comport with the due process limitations on hauling a party into a distant forum without its consent.

Because the Court holds that TZAC has not met the "threshold showing of the minimum contacts" to support general or specific jurisdiction, it need not address the reasonableness prong of the due process inquiry.  Bank Brussels Lambert, 305 F.3d at 129; see also Metropolitan Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996) ("if the constitutionally necessary first-tier minimum is lacking, the inquiry ends") (quoting Donatelli v. National Hockey League, 893 F.2d 459, 465 (1st Cir. 1990)).

TZAC concludes its argument with a perfunctory request to take discovery and hold an evidentiary hearing "to the extent that the Defendant has made factual submissions to the Court."  (P. Mem. at 9.)  The Court denies the request in the absence of any factual submissions from Christian Aid, and having been proffered no reason why such a hearing would bolster the allegations in the Amended Complaint.  The Court also denies TZAC's request to amend its complaint.  This litigation commenced on June 2, 2017, over three years ago.  On November 19, 2020, Christian Aid filed a Pre-Motion Letter asserting, among other arguments, that TZAC had failed to allege the requisite contacts to support the exercise of personal jurisdiction.  (Doc 13).  In the face of these arguments, TZAC quite properly sought leave to amend (Doc 15) and filed

---

[4] Fiscal Year 2019 Development and Humanitarian Assistance Budget, United States Agency for International Development, https://www.usaid.gov/sites/default/files/documents/1869/USAID_FY2019_Budget_Fact-sheet.pdf (last accessed June 1, 2021).

an amended complaint on December 18, 2020 setting forth what it undoubtedly considered to be its strongest showing to support personal jurisdiction. (Doc 17.) Once again, Christian Aid filed a Pre-Motion Letter asserting the absence of personal jurisdiction. (Doc 18.) As the Court's Individual Practices set out, Pre-Motion Letters and responses "will be taken into account in deciding whether further leave to amend will be granted in the event the motion to dismiss is granted." (Individual Practices of P. Kevin Castel, 3.A.iv.) TZAC has had over three years to bolster its jurisdictional allegations. The request to file a further amended complaint is denied.

CONCLUSION

For these reasons, Christian Aid's motion to dismiss is GRANTED. The Clerk is directed to terminate the motion (docs 21, 26), enter a judgment for the defendant dismissing the claim for lack of personal jurisdiction, and close the case.

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       June 9, 2021